**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD BRANNIGAN , | Civil Action No. 15-2991 |
| *Plaintiff,* | |
| v. | **OPINION** |
| MICHAEL HARRISON, *ATTORNEY AT LAW* | |
| *Defendant.* | |

**John Michael Vazquez, U.S.D.J.**

This case arises from Defendant Michael Harrison's ("Defendant" or "Harrison") attempts to collect payment for a medical debt from Plaintiff Richard Brannigan ("Plaintiff" or "Brannigan"). Plaintiff alleges that, in attempting to collect payment, Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Both parties have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. D.E. 35, 36. The Court reviewed all submissions made in support and in opposition to the motions,[1] and considered the

---

[1] In this Opinion, Plaintiff's Amended Complaint (D.E. 30) will be referred to as "Am. Compl." Plaintiff's brief in support of her motion for summary judgment (D.E. 36) will be referred to as "Pl. Brf." Defendant's brief in opposition (D.E. 39) will be referred to as "Def. Opp." Plaintiff's reply brief (D.E. 42) will be referred to as "Pl. Rep." Defendant's brief in support of his motion for summary judgment (D.E. 35) will be referred to as "Def. Brf." Plaintiff's brief in opposition (D.E. 38) will be referred to as "Pl. Opp." Defendant's reply brief (D.E. 41) will be referred to as "Def. Rep."

motions without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion for summary judgment is **GRANTED in part** and Plaintiff's motion for summary judgment is **DENIED**.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  FACTUAL BACKGROUND

On June 4, 2013, New Century Imaging LLC ("NCI"), an outpatient radiology facility in New Jersey, performed a Magnetic Resonate Imaging ("MRI") on Plaintiff. Pl. Brf., Plaintiff's Statement of Undisputed Material Facts ("Pl. SOMF") ¶ 2; D.E. 36-4. After receiving this MRI, Plaintiff's insurance company denied coverage. Def. Brf., Defendant's Statement of Undisputed Material Facts ("Def. SOMF") ¶ 6; D.E. 35-1. NCI then retained Defendant Michael Harrison, an attorney whose law firm's business is largely the collection of medical debts. Pl. SOMF ¶¶ 3-4. NCI asked Defendant to attempt to collect $1,175 from Plaintiff for the MRI and to consider filing a law suit to effectuate that collection. Def. SOMF ¶ 7.

Defendant claims to have first attempted to collect the debt by mailing Plaintiff multiple letters. On February 10, 2014, Defendant sent Plaintiff a letter, indicating the amount due for the MRI and informing Plaintiff that NCI had referred the outstanding bill to Defendant's law firm for collection. Def. SOMF ¶ 8. After receiving no response, Defendant mailed additional letters on March 18, 2014; April 21, 2014; April 30, 2014; June 1, 2014; and July 13, 2014. *Id.* ¶ 10. These letters all purportedly informed Plaintiff that Defendant was a debt collector and that he was attempting to collect a debt from Plaintiff. *Id.* Plaintiff never responded; he indicates that does not recall receiving these letters. *Id.* ¶ 10 fn. 3. Plaintiff sometimes suffers from memory loss due to illness. *Id.* ¶ 5. Defendant, on behalf of NCI, then filed suit against Plaintiff in New Jersey Superior Court on January 9, 2015. Pl. SOMF ¶ 5.

<u>The January 21, 2015 Phone Call</u>

On January 21, 2015, Plaintiff called Defendant's law firm. Pl. SOMF ¶ 6. Before speaking with anyone, Plaintiff heard the following recording: 'Thank you for calling the Law Office of Michael Harrison. Our office may be attempting to collect a debt. Any information obtained may be used for that purpose. This call may be monitored. Please remain on the line and a representative will be with you shortly." Def. SOMF ¶ 13. Joy Peloso,[2] a non-attorney who manages Defendant's legal department, answered Plaintiff's call. Pl. SOMF ¶ 13; Def. SOMF ¶ 14. After verifying Plaintiff's identity, Peloso described the debt owed to NCI, including the referring physician and the insurance company that had been billed. Def. SOMF ¶ 15. When Plaintiff stated that he did not understand why his insurance denied coverage, Peloso called NCI's billing office and ascertained that "the reason for the denial was benefit maximum for the time period ha[d] been reached." Pl. Brf., Declaration of Lawrence Hersh, Ex. A, Transcript of Recorded Phone Calls ("Phone Transcript") at 6 ln. 22-23; D.E. 36-3.[3]

The following conversation then ensued:

> Brannigan: That's ridiculous. Yeah, I don't remember any of it. Because like you said, I've had so many MRI's.
>
> Peloso: Yeah. I mean, if you want to call Blue[the insurance company], you can certainly call Blue and fight it out with them if you think it was denied improperly. You know, I can give you—
>
> Brannigan: I don't have the strength. Really, I don't have the strength anymore to fight.

---

[2] The parties' moving papers spell the agent's name as Joy "Peloso," while the deposition testimony reflects it as Joy "Puloso." The Court will use the parties' spelling.

[3] Defendant agrees that the court reporter obtained by Plaintiff to transcribe the recorded phone call accurately transcribed the calls, with one minor typographical error on page 18, ln 18. Def. Opp.; Defendant's Response to Plaintiff's Statement of Undisputed Material Facts; D.E. 39-1.

> Peloso: I'm sorry. Well, the only thing I can do at this point is try and work this out with you. You know, obviously, my client wants to get paid for what they did. So I don't know, you know—
>
> Brannigan: Well, I don't—is it the client or is it the collection agency?
>
> Peloso: No, it's the client. We represent New Century. Any payment that comes in goes to New Century
> . . .
> Brannigan: Right. Because I actually told [NCI's billing office]— that I said I would pay them, if I owe. You know, I need proof that I owe, because like I said I've had so many MRI's.
>
> Peloso: Yeah.
>
> Brannigan: I said I would pay them. They said they won't—no longer accept money.
>
> Peloso: No, they won't because they're no longer handling the account. We are. So because the account has basically been turned over to Michael Harrison now for collection, payment comes here.

*Id.* at 7 ln. 3-18 & 8 ln. 9-19. Peloso also offered to attempt to obtain for Plaintiff an explanation

of benefits regarding the coverage denial. Peloso added that if Plaintiff sent payment to Harrison's

law firm, the money would go to NCI. *Id.* at 9 ln. 4-8.

Plaintiff and Peloso then began discussing the settlement of the debt owed:

> Plaintiff: And what can we do as far as lowering the payment because I don't have that kind of money.
>
> Peloso: Right.
>
> Brannigan: I'm on Medicaid and everything else.
> . . .
> Brannigan: Living at home. I have no assets, so suing me would be basically pointless.
>
> Peloso: Right. Well, the suit is there. That's happened, but –
>
> Brannigan: Right, I know, but I can answer it and fight it and I don't want to go through all of that. I would prefer –

Peloso: Right.

Brannigan: —you know, if it is a legitimate claim, then—

Peloso: Yeah. It was done. I mean, do you know what I mean? But this is what I need. I need from you an offer to settle this. . . .

*Id.* at 9 ln. 9-14, 20-25 & 10 ln. 1-7. In response, Plaintiff indicated that he would pay $500 that day to settle the debt. Peloso promised to relay that offer. *Id.* at 9 ln. 19-21.

However, rather than the phone call ending, the following colloquy took place:

Brannigan: I mean, I don't have to write an answer to the Court, but if I have to, I will.

Peloso: Well, I'm going to tell you what's going to happen if you do that.

Brannigan: Sure.

Peloso: Because I go through this like day in and day out.

Brannigan: Right.

Peloso: First of all, it's going to cost you $30 to do that.

Brannigan: Right.

Peloso: Then the Court is going to put it down for trial, because that's automatic. You file an answer, we get a trial. Then, this office, in response to your answer, which is going to be I had insurance or whatever, we're going to respond with a motion which basically sets forth our reasons why you owe money.

Brannigan: Right.

Peloso: Service was rendered. Claim went to Blue. They denied. And I think we can all see where this is going to go. So I don't even want to see you—I'd rather you pay my client then send $30 to the Court. Your number is [redacted].

Brannigan: Correct.

Peloso: I'm now going to call my client.

Brannigan: Right.

*Id.* at 11 ln. 9-25 & 12 ln. 1-9. Peloso informed Plaintiff that he would hear from her within the next few days regarding NCI's response to his settlement offer. Def. SOMF ¶ 25.

The January 29, 2015 Phone Calls[4]

During these two unrecorded calls, Peloso informed Plaintiff that NCI would accept $700 for settlement of the $1,175 debt, paid in two to three installments. Def. SOMF ¶ 27. Plaintiff responded by telling Peloso that he was not feeling well and would call her back. *Id.* Later that day, Plaintiff called Defendant's law firm, listened to the recorded disclosure, and then spoke with Peloso. *Id.* ¶¶ 27-28. Plaintiff countered with $600 in a single payment. *Id.* ¶ 27.

The February 4, 2015 Voicemail

Peloso conveyed Plaintiff's counteroffer to NCI. She then left Plaintiff the following voicemail:

> This message is for Richard. This is Joy [Peloso] from Attorney Michael Harrison calling you regarding New Century Imagine. Please call me at 973-361-9271. Thank you.

Phone Transcript at 14 ln. 1-4.

The February 6, 2015 Phone Call

Two days later, Plaintiff called Defendant's law firm and again listened to the recorded disclosure. Another agent of Defendant's law firm, Michael Steinberg, answered. Def. SOMF ¶ 39. Plaintiff asked to speak with Peloso:

> Brannigan: Hi, Mike. Can I speak with Joy?
>
> Steinberg: Sure. May I ask who is calling?
>
> Brannigan: This is Richard Brannigan.

---

[4] Plaintiff has no knowledge of the facts concerning the January 29, 2015 calls. Pl. Opp., Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ¶¶ 26-28; D.E. 38-1.

> Steinberg: Okay. Will she know what it's regarding?
>
> Brannigan: Yeah.
>
> Steinberg: Hold on one minute.

*Id.* at 15 ln. 8-14.

Peloso picked up the call and informed Plaintiff that NCI accepted his offer of $600 made in a single payment. Plaintiff then asked if NCI had proof that he agreed to pay for the MRI. Specifically, Plaintiff wanted to know if there was an existing contract since he could not remember having the MRI done. When Peloso said she had no contract to send to Plaintiff, Plaintiff responded that it was okay. Peloso told Plaintiff to call her if he had any concerns. *See id.* at 15-17.

### The February 10, 2015 Phone Call[5]

During this unrecorded call, Plaintiff called Defendant's law firm, listened to the recoded disclosure, and then spoke with Peloso. Def. SOMG. ¶¶ 36-38. Plaintiff informed Peloso that he would pay the $600 via a check through Defendant's website. *Id.*

### The February 12, 2015 Phone Call

On February 12, 2015, Plaintiff called Defendant's law firm, listened to the recorded disclosure, and then spoke with Steinberg. Def. SOMF ¶ 39. The following conversation then occurred:

> Steinberg: This is Mike. May I help you?
>
> Brannigan: Hi, Mike. This is Richard Brannigan. I paid my bill last night. I was just wondering when the case will be dismissed.
>
> Steinberg: Do you have a docket number?

---

[5] Plaintiff has no knowledge of the facts concerning the February 10, 2015 call. Pl. Opp., Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ¶¶ 36-38; D.E. 38-1.

Brannigan: No, I don't. Wait.

Steinberg: Or account number.

Brannigan: Account number, yes, I do have the account number. It is NCI-500012617.

Steinberg: You paid it online?

Brannigan: Yes.

Steinberg: Okay. As soon as the payment is applied then we send a letter to the Court dismissing the case and you get a copy in the mail.

Brannigan: How long does that usually take?

Steinberg: I don't do—I don't process the online payments so I don't have, like, an exact answer. But I would say probably within a week.

Brannigan: All right. Because I have to submit a letter by the 23rd, so it would have to be done by then.

Steinberg: No, you don't have to send a letter to the Court. That's only if you wish to schedule a trial date. So you don't have to submit a response because we're not going to Court.

Brannigan: Okay. All right. Thank you very much, Mike.

Steinberg: Sure. No problem.

Brannigan: Have a good day.

Steinberg: You too.

Phone Transcript at 14 ln. 1-4.

### The February 18, 2015 Phone Call

The final phone call between Plaintiff and Defendant's law firm took place on February 18, 2015.[6] Def. SOMF ¶ 44. Plaintiff called Defendant's law firm, listened to the recorded

---

[6] Defendant states that this phone call took place sometime between February 15-19th, 2018. Def. SOMF. ¶ 44. Plaintiff supplies, and Defendant does not contest, that the phone call took

disclosure, and then spoke with Steinberg about the pending state court case. *Id.* ¶¶ 44-45. Plaintiff

and Steinberg, in relevant part, discussed the following:

> Brannigan: All right. I called the Court. They said my case still wasn't dismissed. Do you have information on that?
>
> Steinberg: What's your docket number?
>
> Brannigan: It's DC-000169-15.
>
> (Pause)
>
> Steinberg: Okay. For New Century Imaging?
>
> Brannigan: Right.
>
> Steinberg: You made the payment online.
>
> Brannigan: Correct.
>
> Steinberg: Okay, It was just applied to your account this past Friday. So that's why it hasn't been dismissed yet. But I'll go ahead and adjust off the remaining balance because it was a settlement for the $600.
>
> Brannigan: Correct.
>
> Steinberg: And we'll get the letter filed with the Court and you'll receive a copy by mail.
>
> Brannigan: Okay, because it only has until Monday. So I'm going to have to file—I'm sorry.
>
> Steinberg: No, no, no. You—Monday is only what is for filing a Court date. You've paid the settlement, so you don't need to file a response because there's no need to go to Court. So if you do that, all you're doing is wasting more money on your part because there's no further action being taken on our end because you paid the balance.
>
> Brannigan: Right, but I don't know that. That's the problem. So if it's not dismissed by then—I'm sorry?

---

place on February 18, 2015. Pl. SOMF ¶ 11. Regardless, the exact date makes no difference to the outcome in this case.

Steinberg: If you file—I mean, you can certainly go ahead and do that, but I'm just telling you right now, it's a complete waste of your time and money because all we'll be doing is sending a letter to the Court saying that we had a settlement that you already paid and to cancel the trial date. So you would actually elongate the process of dismissing the case. But it's entirely up to you, whatever you feel is necessary and I'll make a note on the account.

Brannigan: Okay. Do you think it will get there anytime soon? I mean, if it was applied Friday, it should probably be there pretty soon, right? The letter?

Steinberg: I'm not even sure—no, normally Mr. Harrison has an office policy that we have to wait a 30 day period and stay the legal action upon receipt of a settlement payment if it's not in the form of a bank check or money order. I'll ask him if I can dismiss it sooner. And he may let me, that's certainly fine. I just have to get his authorization first.

Brannigan: Okay. All right. Thank you very much.

Steinberg: Sure, no problem.

Phone Transcript at 20 ln. 11-25; pg. 21 ln 1-25; pg. 22 ln. 1-9.

<u>The Parties' Actions Following these Conversations</u>

On February 19, 2015, Defendant submitted a letter to the state court, asking the court to dismiss the matter "as the bill has been paid in full." Def. Brf., Ex. J; D.E. 35-12. The parties dispute what occurred next. Defendant claims that the state court informed him that Plaintiff had filed an answer to Defendant's complaint and, therefore, the parties now needed to file a jointly signed stipulation of dismissal. Def. SOMF ¶ 52. Defendant alleges that this caused a delay in the dismissal of the lawsuit until sometime after March 31, 2015. *Id.* Plaintiff disagrees. Pl. Opp.,

Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ¶ 52; D.E. 38-1. Plaintiff does not allege that he ever filed an Answer.[7]

### Defendant Harrison's Work Policies and Procedures

Defendant provides his employees, including Peloso and Steinberg, with a copy of written out policies and procedures on a yearly basis. Def. SOMF ¶ 54. Defendant's written policies, in relevant part, include: (1) generally providing information to the debtor or his spouse only after verifying his identity; (2) a script for any voicemail left by employees, which includes that that the call is from a debt collector for the purpose of collecting a debt; (3) requiring employees, at the beginning of any phone call they initiate, to always identify themselves as a debt collector attempting to collect a debt; (4) always being polite and calm on the phone; (5) never misleading or saying anything untrue to the debtor; (6) never telling the debtor how to respond to Defendant's law firm's actions; and (7) only offering a debtor a settlement if the amount has been approved by the client or an office attorney. Def. Brf., Ex. K; D.E. 35-13.

## B. PROCEDURAL HISTORY

On April 28, 2015, Plaintiff filed his initial Complaint. D.E. 1. On February 23, 2016, the case was reassigned to the undersigned. D.E. 14. On January 18, 2017, Plaintiff filed an Amended Complaint. D.E. 30. In his Amended Complaint, Plaintiff alleges one count: a FDCPA violation. Am Compl. ¶¶ 16-18. Plaintiff claims that on several occasions Defendant's agents, Peloso and Steinberg, made misleading statements to Plaintiff that violated the FDCPA. On May 4, 2017.

---

[7] The Court notes that either party could easily have attached an exhibit proving or disproving this fact. However, for the purposes of these summary judgment motions, this fact is immaterial.

On June 15, 2017, Defendant and Plaintiff both moved for summary judgment. D.E. 35, 36. The parties opposed each other's motion and filed replies to support their respective motions. D.E. 38, 39, 41 & 42.

## II.  SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To

withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## III.   LAW AND ANALYSIS

### A. FDCPA

The FDCPA "creates a private right of action against debt collectors who fail to comply with its provisions." *Grubb v. Green Tree Servicing, LLC*, No 13-07421, 2014 WL 3696126, at *4 (D.N.J. July 24, 2014). The FDCPA was enacted by Congress in 1977 with the purpose of eliminating "abusive, deceptive, and unfair debt collection practices" by debt collectors. 15 U.S.C. § 1692a. "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013). To that end, "[l]ender-debtor communications potentially giving rise to claims under the FDCPA should be analyzed from the perspective of the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006)). "[A]lthough this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read

with care.'" *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

To succeed on an FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). The FDCPA defines a consumer as "any natural person obligated or allegedly obligated to pay any debt." § 1692a(3). A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "Creditors -- as opposed to 'debt collectors' -- generally are not subject to the FDCPA." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). "The statute does not apply to persons or businesses collecting debts on their own behalf," *Staub v. Harris*, 626 F.2d 275, 277 (3d Cir. 1980), "[b]ecause creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill," *Pollice*, 225 F.3d at 403. Instead, "[the FDCPA] is directed to those persons who are engaged in business for the principal purpose of collecting debts." *Id.*

The parties do not dispute that under the statute Plaintiff is consumer, Defendant is a debt collector, or that Defendant was attempting to collect a debt from Plaintiff. Thus, the first three elements of a FDCPA cause of action are satisfied. The critical question is whether Defendant violated a provision of the FDCPA in collecting the debt owed to NCI. The parties each seek summary judgment concerning the following sections of the FDCPA: Section 1692d(6), Section

14

1692e, Section 16929e(3), Section 16929e(11), and Section 1692f. Defendant adds that he is entitled to summary judgment on the *bona fide* error defense pursuant to Section 1692k(c).

Section 1692d, "Harassment or Abuse," in relevant part, part provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
>> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d.

Section 1692e, "False or Misleading Representations," in relevant part, provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
>> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
>> . . .
>> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e.

Section 1692f, "Unfair Practices," provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

Finally, Section 1692k, "Civil Liability," provides:

> (c) Intent. A debt collector may not be held liable in any action
> brought under this subchapter if the debt collector shows by a
> preponderance of evidence that the violation was not intentional and
> resulted from a bona fide error notwithstanding the maintenance of
> procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k.

## B. LEGAL ANALYSIS

Plaintiff claims that Defendant's agents violated the FDCPA over the course of five communications with Plaintiff. The communications were in 2015 on January 21st, February 4th, February 12th, and February 18th. The Court will address the arguments concerning each communication in turn.

### 1. The January 21st Phone Call

Plaintiff argues that during the January 21st phone call, Peloso violated FDCPA Sections 1962e, 1962e(3), and 1962f. First, Plaintiff argues that Defendant violated Section 1962e when Peloso "attempted to dissuade Plaintiff from exercising his rights to file an Answer to the Complaint by using false, deceptive and misleading statements." Pl. Brf. at 15; D.E 36. Specifically, Plaintiff argues that Peloso took advantage of knowing that Plaintiff was poor and sick, in order to convince him that filing an Answer was costly, would require his attendance at a trial, and that he would lose. *Id.* Further, Plaintiff alleges that Peloso's statement to Plaintiff that any payment sent to Defendant would go to NCI was materially false. *Id.* at 17.

Second, Plaintiff claims that Defendant violated both Sections 1962e and 1962e(3) when Peloso gave Plaintiff the impression that she is an attorney and provided him with legal advice. *Id.* at 19-24. Plaintiff points out that Defendant's recorded disclosure stated that Plaintiff had reached a law office and that a representative would be with him shortly. *Id.* at 21. Under the

least sophisticated consumer standard, Plaintiff asserts that it was reasonable to assume that the person who answered his call was an attorney. *Id.* at 22. Plaintiff argues that this assumption became more reasonable in light of the conversation that followed, during which Peloso used a first person pronoun while describing a legal process to Plaintiff. *Id.*

Third, Plaintiff states that Defendant violated Section 1692f because "much of Defendant's conduct was unfair and unconscionable" during communications with Plaintiff. *Id.* at 28. In support, Plaintiff again claims that Peloso's attempts to dissuade Plaintiff from filing an answer, her misrepresentation that all money paid to Defendant went to NCI, her misrepresentation of the legal process of the state court action, and her providing legal advice was unfair and unconscionable conduct in violation of Section 1692f. *Id.*

In contrast, Defendant moves for summary judgment that the January 21st phone call did not violate Section 1692e(3). Defendant asserts that it was unreasonable for Plaintiff to think that Peloso was an attorney since she never claimed to be and the recorded disclosure stated that a "representative" not "attorney" would be with the caller shortly. Def. Brf. at 15; D.E. 35.

Defendant further argues that Peloso never gave Plaintiff legal advice in violation of Section 1692f. Defendant first argues that neither the unauthorized practice of law nor a violation of the Rules of Professional Conduct state a FDCPA cause of action. Defendant cites to several case in support, including *Cohen v. Wolpoff & Abramson, LLP*, No. CIV.A.08-1084, 2008 WL 4513569, at *1 (D.N.J. Oct. 2, 2008). Defendant next argues that Section 1692f is meant as a "catch-all provision" for FDCPA violations when no other specific provision applies, citing *Ali v. Portfolio Recovery Assocs., LCC*, No. CIV. 13-4531, 2014 WL 1767564, at *4 (D.N.J. May 2, 2014). Def. Opp. at 29. To that end, Defendant asserts that Plaintiff's arguments under Section 1692f fail as a matter of law. *Id.*

17

Alternately, Defendant argues that if the Court finds that Peloso violated the FDCPA during the January 21st phone call, he is still entitled to summary judgment under Section 1692k(c). In support, Defendant asserts that any violation of the FDCPA by Peloso was unintentional and contrary to Defendant's express written policy and procedures. Def. Brf. at 21.

a. Section 1692e

As noted above, Section 1692e prohibits a debt collector from using any false, deceptive, or misleading representations or means in connection with collecting a debt. Here, the question is how the least sophisticated debtor, not the individual Plaintiff, would view the allegedly false statements. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 420 (3d Cir. 2015). The Third Circuit has reasoned that the FDCPA's purpose of protecting consumers "is best served by a definition of 'deceive' that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's [communications]." *Id.* (alteration in original). Thus, the Third Circuit has held that a debt collector "is responsible for its [communication's] content and for what the least sophisticated debtor would have understood from it." *McLaughlin v. Phelan Hallinan & Schmieg*, LLP, 756 F.3d 240, 246 (3d Cir. 2014) (alteration in original). A communication will be found deceptive if, under the least sophisticated debtor standard, the communication "can be reasonably read to have two different meanings, one of which is inaccurate." *Jensen*, 791 F.3d at 420. Further, "[w]hile it is impossible to know whether a statement is misleading or deceptive without reference to the person being misled or deceived—here, the least sophisticated debtor—the same is not true of falsity; a statement is either true or false." *Id.* Nevertheless, any allegedly false or misleading statements are only actionable if they are material. *Id.* at 421 (holding that "a statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor"). Moreover, a debt collection communication should be considered in context, meaning

18

within the context of the communication as a whole. *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 430 (3d Cir. 2018) (holding that any debt collection letters "when read in their entirety, must not deceive or mislead the least-sophisticated debtor"); *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 149 (3d Cir. 2013) (finding that "even the 'least sophisticated debtor' is expected to read any notice in its entirety"); *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 300 (3d Cir. 2008) ("Viewed as a whole, the settlement offers are not deceptive.").

The Court listened to the January 21st call and carefully reviewed the complete conversation. Peloso was always polite, professional, and cordial; she was never abusive or harassing. Further, Plaintiff ignores that Peloso first told Plaintiff that he had the right to contest the insurance company's decision, to which he replied that he did not "have the strength to fight" with his insurance company over the merits of the claim. Directly contrary to Plaintiff's characterization, Peloso expressly informed Plaintiff that he had the ability to contest the claim; Plaintiff said that he did not want to. In response, Peloso explained that all she could do at that point was attempt to "work this out" with Plaintiff. Plaintiff then informed Peloso that he had already told the NCI billing department that he "would pay them." Plaintiff next expressed his disinterest in litigating the claim, telling Peloso, "I can answer and fight it and I don't want to go through all of that." In fact, Plaintiff warned Peloso that he was judgment proof, indicating that "I have no assets, so suing me would be basically pointless." Thus, looking at (and listening to) the entire conversation, provides an important backdrop to the portion of the conversation concerning the answer. In light of this context, a reasonable jury could conclude that Plaintiff was not misled or deceived by Peloso's later statements concerning the answer because he had already informed her that he was not going to contest the merits of the debt and that he was going to settle.

At the same time, Peloso's statements as to filing an answer are not unassailable. When Plaintiff asked Peloso whether he needed to file an answer, she could have merely stated that she was not a lawyer and, even if she were, she could not give him legal advice. She could have also indicated that Plaintiff had the right to file an answer and that Defendant's firm would then contest the matter in court. Instead, Peloso said, "[w]ell, I'm going to tell you what's going to happen if you do that." She then told Plaintiff he would need to pay $30 to file an answer. While this statement is accurate, it omits (as Plaintiff points out) that Plaintiff may have been able to avoid the fee if he qualified for *in forma pauperis* status. Peloso further indicated that once an answer is filed, the matter is set for trial. Again, while this statement *may* be accurate (assuming that the vicinage scheduled trial dates on the filing of an answer), it also omitted other steps, such as discovery and motion practice. Of greater concern, Peloso ended her description of the process stating, "[a]nd I think we can all see where this is going to go. So I don't even want to see you— I'd rather you pay my client then send $30 to the Court." The statement that "I think that we can all see where this is going to go[,]" could be reasonably interpreted under the least sophisticated debtor standard as an indication that Plaintiff was going to lose his court case. Thus, a reasonable jury could conclude that Peloso went too far in her statements regarding the answer and, in doing so, violated Section 1692e. Genuine issues of material fact, therefore, remain regarding whether Peloso made deceptive or misleading statements concerning Plaintiff's filing of an answer.[8]

---

[8] While the Court finds that genuine issues of material fact remain here, it notes that the cases Plaintiff cites in support of his 1692e claim are distinguishable. For example, Plaintiff cites to *Easterling v. Collecto, Inc.*, 692 F.3d 229, 232 (2d Cir. 2012), to support his 1692e claims. However, in *Easterling*, the Second Circuit found a Section 1962e violation when the collection letter misleadingly stated "ACCOUNT INELIGIBLE FOR BANKRUPTCY DISCHARGE" and "Your account is NOT eligible for bankruptcy discharge and must be resolved." *Id.* The *Easterling* court found such language misleading because the loan at issue was only presumptively nondischargeable in bankruptcy. *Id.* at 231. Here, Peloso did not make similar

Plaintiff also alleges that Peloso made materially false statements concerning Defendant's fee arrangement with NCI. Plaintiff takes issues with Peloso's statement that "[w]e represent New Century. Any payment that comes in goes to New Century." Plaintiff points out that, in reality, Defendant pays NCI two-thirds of whatever payment he obtains and retains one-third for himself. Pl. Brf. at 16. Therefore, Plaintiff claims that this statement led him to believe that Defendant "was just doing its job, and did not stand to gain financially from any payments that Plaintiff made." *Id.* at 17. Plaintiff, however, fails to provide the Court with any authority indicating that fee arrangements between a debt collector and his client can form the basis of a false or misleading claim.

Neither Peloso nor anyone on behalf of Defendant ever gave Plaintiff the impression that Defendant was working at an hourly rate or for free. In fact, it seems that Defendant's $200 share would be an inadequate amount if based on an hourly charge. Plaintiff clearly knew that Defendant was a debt collector working for NCI, so the least sophisticated debtor would have known (or should have known) that Defendant was being paid for his work. While Plaintiff quibbles with the wording of Peloso's answer, the substance was clear - if Plaintiff paid the agreed settlement amount to Defendant's law firm, the debt owed to NCI would be extinguished. The amount of the settlement was Plaintiff's business; NCI and Defendant's fee arrangement was not. Therefore, the Court denies Plaintiff's motion for summary judgment as to fee arrangement communication violating Section 1692e.

---

statements as to the nature of Plaintiff's debt. The *Easterling* case is neither controlling nor illustrative of the statements at issue here.

b. Section 1692e(3)

The Court finds that genuine issues of material fact exist regarding Plaintiff's claim that he believed that Peloso was an attorney. The critical question is whether the least sophisticated debtor could reasonably have thought that Peloso was an attorney, when, in fact, she was only Defendant's agent. *See Rosenau*, 539 F.3d at 223. A false representation, or an implication, that a non-attorney debt collector is an attorney is enough to violate Section 1692e(3). *Id.*

The parties agree that the first time Plaintiff called Defendant's law firm he heard a recorded disclosure that stated he had reached "the Law Office of Michael Harrison" and that a "representative" would be with him shortly. Peloso then answered the call and discussed the debt owed to NCI. Peloso never informed Plaintiff that she was not an attorney. Plaintiff, further, alleges that the substance of this discussion with Peloso, where she used the pronoun "we" to describe the legal actions that Defendant's law firm would take if Plaintiff filed an answer, implied she was an attorney.

In support, Plaintiff points to the Third Circuit's decision in *Rosenau*, 539 F.3d at 219. There, the plaintiff alleged that a collection letter violated Section 1692e(3), because the letter stated that it was from the defendant's legal department. *Id.* at 220. The Third Circuit agreed that the letter could be a possible violation, noting that none of the employees in the defendant's legal department were lawyers. *Id.* ("It is possible that the phrase 'Legal Department' could imply to the least sophisticated debtor that a lawyer was involved in drafting or sending the letter."). Therefore, the Circuit held that at the plausibility stage, the plaintiff had stated a claim upon which relief might be granted. *Id.* at 224.

Defendant asserts that *Rosenau* is distinguishable because it dealt with a letter signature rather than a phone call. Further, the case was at the plausibility, rather than summary judgment,

stage. Def. Opp. at 15. Relying on the recorded disclosure, Defendant argues that since Plaintiff

heard that he would speak with a *representative*, Plaintiff cannot reasonably claim that he thought

an *attorney* answered. *Id.* at 17.

Both parties move for summary judgment on this issue. Both parties have presented

sufficient evidence to enable a jury to reasonably find for either side. A reasonable jury could

agree with Plaintiff, that he believed that he was speaking with an attorney because the recording

identified a law firm and a representative. Plaintiff could also prevail because Peloso described

the litigation process and referred to what "we," *i.e.* the firm collectively, would do. On the other

hand, a reasonable jury could also find for Defendant because the recording never identified the

representative as a lawyer and Peloso never stated that she was an attorney. Both Plaintiff and

Defendant's motions for summary judgment as to the January 21st phone call violating Section

1692e(3) are denied.

### c. Section 1692f

The Court finds that the January 21st phone call did not violate Section 1692f as a matter

of law. At the outset, the Court notes that Plaintiff barely addresses Defendant's argument that a

Section1692f claim must be dismissed when Plaintiff relies on another provision. Plaintiff simply

asserts, in summary fashion, that there was additional "other" conduct at issue that violated Section

1692f. Pl. Opp. at 10; Pl. Rep at 11. Plaintiff fails to identify the "other" conduct.

Plaintiff's conclusory assertions are insufficient to create a genuine issue of material fact.

Section 1692f "cannot be the basis for a separate claim for conduct that is already explicitly

addressed by other sections of the FDCPA." *Ali*, 2014 WL 1767564, at *4 (internal quotation

omitted). "Accordingly, '[c]ourts have ... routinely dismissed § 1692f claims when a plaintiff does

not identify any misconduct beyond that which [he] assert[s] violate[s] other provisions of the

FDCPA.'" *Id.* (quoting *Corson*, 2013 WL 4047577, at *7)). Plaintiff bases his 1692f claims on the same conduct of Defendant that he alleges violated 1692e and 1692e(3). He fails to identify additional improper conduct. Therefore, the Court grants Defendant's motion for summary judgment the January 21st phone call did not violate Section 1692f.[9]

### d. Section 1692k(c)

Finally, as noted above, Section 1692k(c), "provides that a debt collector is not liable in an action brought under the Act if she can show 'the violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010) (quoting 15 U.S.C. § 1692k(c)). Further the *bona fide* error defense does not apply to mistakes of law, that is, a FDCPA violation resulting from an incorrect legal interpretation of the FDCPA. *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 394 (3d Cir. 2017) (citing *Jerman*, 559 U.S. at 577). It only applies in cases of clerical or factual mistakes. *Id.* (citing *Jerman*, 559 U.S. at 587).

To avail himself of this defense, a defendant must establish that "(1) the alleged violation was unintentional, (2) the alleged violation resulted from a *bona fide* error, and (3) the *bona fide* error occurred despite procedures designed to avoid such errors." *Beck v. Maximus, Inc.*, 457 F.3d 291, 297–98 (3d Cir. 2006) (citations omitted). A debt collector must prove each element by a preponderance of the evidence. *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 428 (D.N.J. 2013). The first element is a "subjective test that requires a credibility determination concerning the debt collector's assertions that the ensuing FDCPA violation was unintentional."

---

[9] Because the Court grants Defendant's motion for summary judgment on this basis, the Court does not reach Defendant's argument that the unauthorized practice of law and a violation of the Rules of Professional Conduct do not state a cause of action under the FDCPA.

*Agostino v. Quest Diagnostics, Inc.*, No. CIV.A. 04-4362, 2011 WL 5410667, at \*4 (D.N.J. Nov. 3, 2011) (citing *Johnson v. Riddle*, 443 F.3d 723, 728–29 (10th Cir.2006)). The second and third elements "are objective and require an inquiry into whether any precautions were actually implemented, and whether such precautions 'were reasonably adapted to avoid the specific error at issue.'" *Id.* (quoting *Johnson*, 443 F.3d at 729).[10]

Here, genuine issues of material fact exist as to whether the *bona fide* error defense is available to Defendant. To prove the first element, Defendant points the Court to Joy Peloso's deposition. In her deposition, Peloso testified that as a non-attorney debt collector she could not provide debtors with legal advice. Def. Brf., Ex. D, Deposition of Joy Peloso ("Peloso Dep.") at 44 ln. 3-25 & 45 ln. 1; D.E. 35-6. She further testified that she never provided Plaintiff with legal advice. Plaintiff, however, argues that Peloso intentionally deterred Plaintiff from filing an answer and gave him legal advice. Pl. Opp. at 13. Plaintiff argues that Peloso's statements concerning Plaintiff's filing of an answer can only be construed as intentional. *Id.*

Because the first element of the *bona fide* error test requires the Court to make a credibility determination, it is inappropriate for the Court to address at the summary judgment stage. When the first element is not contested, a court may be able to determine the applicability of the defense at the summary judgment stage. But here the parties contest whether Peloso intentionally violated the FDCPA. Therefore, the Court declines to grant summary judgment on the *bona fide* error defense and, so, will not address the second and third elements. Notwithstanding this, Defendant can raise the *bona fide* error defense at trial.

---

[10] The Court notes that Plaintiff cites to the case of *Agostino v. Quest Diagnostics, Inc.* for the proposition that the *bona fide* error defense involves questions of fact for the jury. Pl. Opp. at 11. In fact, *Agostino* addresses questions of fact in the summary judgment standard of review section - not the section on a *bona fide* error defense.

## 2. February 4th Voicemail

Plaintiff argues that Peloso's voicemail on February 4th violates Sections 1692e(11) and Section 1692f of the FDCPA because Peloso failed to indicate that that the call was from a debt collector. Pl. Brf. at 24-27. Plaintiff relies heavily on *Wong v. Green Tree Servicing, LLC*, 2014 WL 4418077, at *1 (D.N.J. Sept. 5, 2014). Plaintiff also claims that Peloso's "failure to disclose" was unfair and unconscionable conduct in violation of Section 1962f. *Id.* at 28.

Defendant, on the other hand, argues that he is entitled to summary judgment finding that the February 4th voicemail did not violate FDCPA Sections 1692e(11), 1692d(6), and 1692f. Defendant claims that the voicemail did not violate 1692e(11) because Plaintiff already knew that Defendant was a debt collector for whom Peloso worked. *Id.* at 10-13. Moreover, Defendant argues that the voicemail sufficiently disclosed that the voicemail was from a debt collector. Defendant cites primarily to *Davis v. Hollins Law*, 832 F.3d 962, 963 (9th Cir. 2016). Defendant also argues that Peloso did not violate Section 1692d(6) when she left the voicemail for the same reasons that Peloso did not violate Section 1692e(11). Def. Brf. at 5-8; D.E. 35. Finally, as above, Defendant argues that Section 1692f is meant as a "catch-all provision" for FDCPA violations when no other specific provision applies. Def. Opp. at 29. To that end, Defendant asserts that Plaintiff's arguments under Section 1692f fail as a matter of law. *Id.* Alternately, Defendant argues that if the Court finds that the voicemail violated the FDCPA, he is nevertheless entitled to summary judgment under Section 1692k(c), the *bona fide* error defense.

### a. Section 1692e(11)

As noted, Plaintiff relies on *Wong*, 2014 WL 4418077, at *1. In *Wong*, the defendant debt collection service attempted to collect fees owed on a personal mortgage by leaving two voicemails for the plaintiff. 2014 WL 4418077, at *1. The first voicemail stated, "This message is for Jerry

Wong, Jerry this is Daniel from Greentree [sic], sir I need a call back from you today, my number is 877–808–0048 my direct extension is 86428 give me a call back at your earliest convenience sir I will be in the office until 8, thank you, have a good one." *Id.* (alteration in original). The second voicemail indicated, "This message is for Jerry Wong, my name is Calandra I'm calling from Greentree [sic] please give me a call at 855–892–8914." *Id.* (alteration in original). The trial judge denied the defendant's motion to dismiss as to Section 1962e(11). *Id.* at 5. The court in *Wong* found that the plaintiff had plausibly plead a Section 1962e(11) violation because the defendant argued, without evidence, that the plaintiff was aware that Greentree was debt collection service. However, the district court noted that the defendant cited several non-controlling cases, which suggested that at the motion for summary judgment stage a different determination could be reached. *Id.* at 5 fn. 4. Finding such an argument premature, the court did not address it. *Id.*

Defendant counters that, while not binding, the Ninth Circuit's decision in *Davis* is more relevant. 832 F.3d at 962. In *Davis*, the plaintiff obtained a credit card and subsequently failed to pay the card's balance. *Id.* at 964. The debt was referred to Hollins Law, the defendant's law firm and debt collection agency. *Id.* at 964-65. The defendant's agent called and spoke with the plaintiff about the debt. After not hearing back from the plaintiff, the agent called and spoke with the plaintiff's wife. *Id.* at 965. The following month another agent began working on the case. The new agent emailed with the plaintiff regarding settlement offers. *Id.* Five days after the plaintiff sent the agent an email, the agent left the plaintiff a voicemail. It provided: "Hello, this is a call for Michael Davis from Gregory at Hollins Law. Please call sir, it is important, my number is 866-513-5033. Thank You." *Id.* at 966. The plaintiff later filed suit against the defendant alleging, among other things, that the voicemail violated Section 1692e(11).

The Ninth Circuit held that the voicemail did not violate Section 1692e(11). The Circuit concluded that "given the extent of the prior communications, that the voicemail message's statement that the call was from 'Gregory at Hollins Law' was sufficient to disclose to a debtor with a basic level of understanding that the communication at issue was 'from a debt collector.'" *Id.* at 967 (citing 15 U.S.C. § 1692e (11)). Indeed, the Circuit went on to say that "any other interpretation of [the defendant's agent's] voicemail message would be 'bizarre or idiosyncratic.'" *Id.* (citing 15 U.S.C. § 1692e).

The Court agrees with Defendant's position. Although *Davis* is not controlling, the Ninth Circuit's reasoning is persuasive. Like *Davis*, Peloso's February 4th voicemail came after Peloso and Plaintiff had already communicated on several occasions. Plaintiff spoke with Peloso, at some length, about the debt owed to NCI on January 21st. Plaintiff then had two more conversations with Peloso about the NCI debt on January 29th. On both the January 21st call and one of the January 29th calls, Plaintiff heard the recorded disclosure, which unambiguously indicated that Plaintiff had reached the law firm of Michael Harrison, which was attempting to collect a debt.

Less than a week later, Peloso left Plaintiff the February 4th voicemail, which indicated: "This message is for Richard. This is Joy [Peloso] from Attorney Michael Harrison calling you regarding New Century Imagine. Please call me at 973-361-9271. Thank you." Similar to the voicemail in *Davis*, Peloso provided her name, her employer's name, and the matter about which she was calling. Plaintiff already knew the he allegedly owed NCI payment, that the Law Office of Michael Harrison was attempting to collect the debt, and that Peloso was working on the matter. All of this information would have made it clear to the least sophisticated debtor that the February 4th voicemail was from a debt collector. To find otherwise, stretches credulity and enters into the

"bizarre and idiosyncratic" as the *Davis* court observed. Therefore, Defendant's motion for summary judgment as to the February 4th voicemail violation of Section 1692e(11) is granted.

b. Section 1692d(6)

The February 4th voicemail also did not violate Section 1692d(6). Similar to Section 1692e, Section 1692d prohibits a debt collector from using harassing, oppressive, or abusive conduct to collect a debt. Further, Section 1692d(6), like Section 1692e(11), prohibits a debt collector from making telephone calls without disclosing his identity. However, 1692d(6) adds the qualification that the prohibition is for phone calls placed without *meaningful* disclosure of the debt collector's identity.

The Third Circuit has not addressed what constitutes meaningful disclosure of a caller's identity under Section 1692d(6). Defendant relies on *Pisarz v. GC Servs. Ltd. P'ship*, 2017 WL 1102636 (D.N.J. Mar. 24, 2017). In *Pisarz*, the court acknowledged that while there was "no Third Circuit case addressing the necessity for a debt collector to identify itself in either a voicemail or answering machine message under this FDCPA provision, numerous district courts have determined that a debt collector's failure to reveal itself as a collection agency when leaving messages violates the FDCPA." *Pisarz*, 2017 WL 1102636, at *6 (citations omitted). The court in *Pisarz* then concluded that meaningful disclosure meant disclosing sufficient information so that the recipient was not misled as to the purpose of the call. *Id.*

For the same reasons that there was not a Section 1692e(11) violation, the Court finds no Section 1692d(6) violation. Plaintiff had several, prior substantive conversations with Peloso about the debt owed to NCI. Before the voicemail, Plaintiff was aware of Peloso's name, Defendant's law firm's name, that Defendant's law firm was attempting to collect a debt, and the name of the entity to whom he potentially owed payment. Therefore, Peloso's February 4th

voicemail, in which she disclosed her name, Defendant's law firm name, and that she was calling in regards to the NCI matter meaningful disclosed Defendant's identity as a debt collector. Defendant's motion for summary judgment as to the February 4th voicemail violation of Section 1692d(6) is granted.

### c. Section 1692f

The Court also finds that the February 4th voicemail did not violate Section 1692f. Plaintiff again fails to identify additional conduct of Defendant that differs from the conduct Plaintiff relies on for a violation Section 1692e(11). As discussed, Section 1692f "cannot be the basis for a separate claim for conduct that is already explicitly addressed by other sections of the FDCPA." *Ali*, 2014 WL 1767564, at *4 (internal quotation omitted). "Accordingly, '[c]ourts have ... routinely dismissed § 1692f claims when a plaintiff does not identify any misconduct beyond that which [he] assert[s] violate[s] other provisions of the FDCPA.'" *Id.* (quoting *Corson*, 2013 WL 4047577, at *7)). Therefore, as to the February 4th voicemail, the Court grants Defendant's motion for summary judgment under Section 1692f.[11]

### d. Section 1692k(c)

Because the Court grants Defendant's motion summary judgment as to the February 4th voicemail under Sections 1692e(11), 1692d(6), and 1692(f), Defendant's Section 1692k(c) argument is moot.

### 3. February 12 & 18th Phone Calls

Finally, Defendant claims that he is entitled to summary judgment because Steinberg did not violate Sections 1692e(3) or 1692f of the FDCPA as a matter of law. Defendant first asserts

---

[11] As noted above, because the grants Defendant's motion for summary judgment on this basis, the Court does not reach Defendant's argument that the unauthorized practice of law and a violation of the Rules of Professional Conduct do not state a cause of action under the FDCPA.

that there was no reasonable or rational basis for Plaintiff to assume that Steinberg was an attorney in violation of Section 1692e(3) for substantially the same reasons argued as to Peloso being viewed as a lawyer. Pl. Brf. at 15-16.

Defendant next argues that no dispute of material fact remains as to whether Steinberg violated Section 1692f. Defendant claims that Steinberg did not give Plaintiff legal advice during either the February 12th or 18th phone call. Moreover, for the same reasons that Defendant argues that Peloso did not violate Section 1692f during the prior communications, Defendant argues Steinberg did not violate Section 1692f. Namely, Defendant again asserts that neither the unauthorized practice of law nor a violation of the Rules of Professional Conduct state a cause of action under the FDCPA. Moreover Defendant also again claims that Section 1692f is meant as a "catch-all provision" for FDCPA violations when no other specific provision applies, citing *Ali*, 2014 WL 1767564, at *4. Def. Opp. at 29. To that end, Defendant asserts that Plaintiff's arguments under Section 1692f fail, here too, as a matter of law. *Id.* Alternately, Defendant argues that if the Court finds that Steinberg violated the FDCPA during either phone call, he is still entitled to summary judgment under Section 1692k(c), the *bona fide* error defense. Def. Brf. at 21.

### a. Section 1692e(3)

For similar reasons that the Court denied summary judgment as to the same issue involving Peloso, the Court finds that genuine issues of material of fact remain regarding the alleged violations of Section 1692e(3) vis-à-vis Steinberg. Plaintiff does not address Defendant's motion as to Steinberg violating Section 1692e(3). Even though Plaintiff fails to oppose Defendant's claim, the Third Circuit has cautioned that "the movant for summary judgment has the burden of demonstrating the absence of genuine issues of material fact . . . and even if the opposing party fails to file contravening affidavits or other evidence, summary judgment must still be

'appropriate' and will be denied where the movant's own papers demonstrate the existence of material factual issues." *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 790 (3d Cir. 1978) (internal citations omitted).

As found above in addressing Peloso's alleged violations of Section 1692e(3), here, a reasonable jury could conclude that the recorded disclosure and Steinberg's communications with Defendant implied to the least sophisticated debtor that Steinberg was an attorney. Steinberg's comments as to the answer were more benign than Peloso's; Steinberg essentially told Plaintiff that he could file an answer if he wanted but that Plaintiff did not need to if he had already paid the settlement amount. Yet, this factual difference with Peloso's comments is not sufficient to preclude Plaintiff from taking the issue to trial. On the other hand, a reasonable jury could find that nothing in the February 12th or 18th phone calls created the implication that Steinberg was a lawyer. Therefore, Defendant's motions for summary judgment as to the February 12th or 18th phone calls violating Section 1692e(3) is denied.

### b. Section 1692f

The Court again finds that the February 12th and 18th phone calls did not violate Section 1692f as a matter of law. Plaintiff again fails to assert additional conduct of Defendant that differs from the conduct Plaintiff already identified to support the other FDCPA violations. Therefore, as to the February 12th and 18th phone calls, the Court grants Defendant's motion for summary judgment under Section 1692f.[12]

---

[12] As noted above, because the grants Defendant's motion for summary judgment on this basis, the Court does not reach Defendant's argument that the unauthorized practice of law and a violation of the Rules of Professional Conduct do not state a cause of action under the FDCPA.

c. Section 1692k(c)

Finally, as discussed above, Section 1692k(c), "provides that a debt collector is not liable in an action brought under the Act if she can show 'the violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" *Jerman*, 559 U.S. at 576 (quoting 15 U.S.C. § 1692k(c)). Here, Defendant is not entitled to summary judgment under Section 1692k(c). Defendant has not sufficiently alleged by a preponderance of the evidence the first element of Section 1692k(c). Defendant instead focuses on Peloso's communication with Plaintiff during the January 21st phone call and February 4th voicemail. He does not allege specific facts to establish that if Steinberg violated Section 1692e(3), the violation was unintentional. Defendant, therefore, falls short on carrying his burden of proof. In addition, because the first element of the *bona fide* error defense requires a credibility determination, it is unlikely that Defendant would be entitled to summary judgment even if he had specifically addressed Steinberg as opposed to Peloso. Consequently, the Court denies Defendant summary judgment pursuant to Section 1692k(c) as to the February 12th and 18th phone calls.

## IV.  CONLCUSION

For the reasons stated above, Defendant's motion for summary judgment (D.E. 35) is **GRANTED in part**. Plaintiff's motion for summary judgment (D.E. 36) is **DENIED**. An appropriate Order accompanies this Opinion.

Dated: April 24, 2018

John Michael Vazquez, U.S.D.J.